Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
717 E. Elmer St, Suite 7
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiffs,*
*Dennis Maurer and The Independence Project, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual, <br><br> & <br><br> THE INDEPENDENCE PROJECT, INC., a New Jersey Non-Profit Corporation <br><br> Plaintiffs, <br><br> vs. <br><br> BARNEGAT VILLAGE SQUARE, L.L.C., a New Jersey Limited Liability Company <br><br> Defendant. | Case No. 3:24-cv-09104 <br><br> **COMPLAINT** |

## Introduction

Plaintiffs, DENNIS MAURER, an individual, and the INDEPENDENCE PROJECT, INC., a New Jersey Non-Profit Corporation; on their own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sue the Defendant, BARNEGAT VILLAGE SQUARE, L.L.C., a New Jersey Limited Liability Company, for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42

1

U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise sui juris. Mr. Maurer resides within Atlantic County at 8 Prospect Ave, Egg Harbor Township, NJ 08234.

2. Plaintiff, THE INDEPENDENCE PROJECT, INC., ("The Independence Project") is a non-profit organization whose members include disabled individuals residing across the country. The non-profit's mission is to facilitate communication among disabled persons, to empower its members through information and awareness, and, ultimately, to ensure equal enjoyment and unfettered access to all places of public accommodation.

3. Defendant, BARNEGAT VILLAGE SQUARE, L.L.C., owns or operates a place of public accommodation, in this instance a strip mall/shopping center/plaza, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

4. Defendant's property is a strip mall/shopping center/plaza, known as Barnegat Village Square, located within Ocean County at 912 West Bay Ave, Barnegat, NJ 08005[1] (the "Property" or "Barnegat Village Square").

5. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

---

[1] Block 116.01 Lot 1.01 on the Municipal Tax Map of Barnegat Township

6.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[2]

7.      Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8.      The Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the ADA.[3]

9.      Named Plaintiff, Dennis Maurer, is an individual with disabilities as defined by and pursuant to the ADA.  Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

## Factual Background

10.     Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

11.     Mr. Maurer has been a member of the Independence Project since 2013 and became the President of the organization in late 2021.

---

[2] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[3] 28 CFR § 36.201(a) and 28 CFR § 36.104
[4] as defined by 28 CFR § 36.105(b)(1-2)

12.     Mr. Maurer's friend and colleague Ronald Moore; a fellow advocate for the disabled and former President of the Independence Project passed away in October 2021. To honor his memory, Mr. Maurer continues the diligent work left behind by Mr. Moore. Mr. Maurer does so by inspecting properties that were previously in violation of the ADA and subject to litigation by the Independence Project and/or its members.  Such properties are inspected by Mr. Maurer, or other members (based on geography), in order to determine if such have been made accessible – as agreed – and continue to remain in compliance; it is his normal practice to inspect the properties under his purview at least twice per year. Mr. Maurer also inspects additional properties that he visits as a patron when they are incident to his inspection routes and/or along his usual travel routes.

13.     Generally speaking, Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous – the same holds true for the property which forms the basis for this action.

14.     Further, the barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, and non-accessible restrooms (even when designated "accessible" or "handicapped"). He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past, often to no avail. Thus, he now finds his redress through the ADA – as Congress intended.

15.     Mr. Maurer has visited the Property on several occasions; his last visit occurred on or about

July 9, 2024, during which time he was travelling through the area, conducting inspections at nearby properties, and travelling up the Garden State Parkway/Route 9. During that visit he purchased grocery items at Acme and lunch at Burger King. Previously he has visited the Acme (including the Starbuck's within), China King, Marchioni's Pizza, and Dazzlz. Mr. Maurer has found that the Property contains violations of the ADA, both in architecture and in policy.

16.	The properties in close proximity to Barnegat Village Square which have previously been subject to litigation by the Independence Project and/or its members for non-compliance of the ADA and are now subject to reinspection by Mr. Maurer are as follows:

   a. Gunning River Mall, located at 849 W Bay Ave, Barnegat, NJ 08005; *NJD Case No. 3:17-cv-06757-MAS-LHG*

   b. Barnegat Plaza, located at 21 S. Main St, Barnegat, NJ 08005; *NJD Case No. 3:18-cv-00687-FLW-LHG*

   c. Lakeside Square, located at 290 Route 9, Waretown, NJ 08758; *NJD Case No. 3:17-cv-08526-MAS-DEA*

   d. Laurel Plaza, located at 304 Route 9, Waretown, NJ 08758; *NJD Case No. 3:17-cv-08529-PGS-LHG*

17.	Mr. Maurer will return to the Property in the future when traveling to and through Barnegat as incident to his usual travels and when performing inspections at properties in the vicinity. Mr. Maurer shall make these visits not only as a patron but also to monitor any progress made with to respect to compliance – he hopes his return visits are not made in vain.

18.	Prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible – as such he regularly travels across New Jersey, Pennsylvania, and New York.

19. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

   a. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804
   b. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013
   c. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020
   d. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028
   e. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757
   f. Freehold Raceway, located at 130 Park Ave, Freehold, NJ 07728
   g. Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073
   h. Saratoga Racecourse, located at 267 Union Ave, Saratoga Springs, NY 12866
   i. Westampton Farm, located at 75 Oxmead Rd, Westampton, NJ 08060

20. In sum, the Property is located (1) just a few minutes from the Garden State Parkway, (2) in proximity to hotels at which Mr. Maurer has stayed and plans to stay at in the future[5], (3) near several other properties inspected by Mr. Maurer for ADA compliance, and (4) on route from his home up the Garden State Parkway and Route 9 to Monmouth Park, Freehold Raceway, and Meadowlands Racetrack.

21. Finally, as it relates to his ongoing, continuous, and nearby travels to the Property – Mr. Maurer (having grown up in northeastern New York and spent the majority of his life in New Jersey) has accumulated friends and family across the region; including his children, grandchildren, nieces, and nephews; all of whom he visits regularly across New Jersey and New York.

22. Mr. Maurer has physically visited the Property and personally encountered exposure to

---

[5] Holiday Inn Manahawkin, 151 NJ 72, Manahawkin, NJ 08050; Blue Creek Inn, 535 US 9, Waretown, NJ 08758

architectural barriers and otherwise harmful conditions that have endangered his safety during his visits to the Property.

23. The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, the Plaintiff has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

24. Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in Paragraph 29.

25. Following any resolution of this matter Mr. Maurer will ensure that the Property undertakes the remedial work that is required under the appropriate standard and remains compliant with the ADA into the future.

**COUNT I**

**Violation of Title III of the
Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

26. Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

27. The Defendant has discriminated against the Plaintiffs, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

28. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in Paragraph 29 are both technically feasible and readily achievable.

29. The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**Parking and Exterior Accessible Route**

    a. The designated accessible parking spaces throughout the Property are not maintained due to faded striping, lack proper identification signage and contain surface cracks, slopes beyond the allowable limits, and abrupt changes in level; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. When making use of the accessible parking spaces Mr. Maurer was confronted with a lack of accessibility which endangered his safety; to avoid these obstacles he was forced to park away from the facility to ensure he would not become blocked out from accessing his van. From there he had to travel around the other noted obstructions, through the traffic area of the parking lot, and make use of an improper curb ramp in order to reach the facility.

    b. The designated accessible parking areas throughout the Property fail to provide a compliant accessible route from the parking areas to the entrances and/or accessible curb ramps; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. The route from the parking areas to the entrances contains impeded by improperly designed curb ramps which contain excessive sloping and protrude the access aisles. Mr. Maurer was endangered by the obstacles when travelling from his van to the tenant entrances.

    c. The exterior accessible route at the Property contains abrupt changes of level and sloping greater than the allowable limits; in violation of Section 402 of the 2010 ADA Standards. These excessive slopes have presented Mr. Maurer with a tipping hazard while the abrupt changes of level could cause damage to his wheelchair.

    d. The Property fails to provide a continuous accessible route throughout the shopping center

    due to excessive cross-sloping and abrupt changes in level; a violation of the ADAAG and Section 402 of the 2010 ADA Standards. Mr. Maurer had to proceed with caution when traversing the route; excessive sloping presents him with a tipping hazard and abrupt changes of level could damage the bottom of his wheelchair which contains a mechanism that keeps him tethered to his vehicle during travel.

e. The Property fails to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of the ADAAG and Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking Mr. Maurer has been forced to park away from the Property so that he could freely access his van without the fear of becoming blocked out by another vehicle.

f. The Property fails to provide a compliant route to the adjacent street/sidewalk and/or the public transportation route; the route contains excessive sloping and abrupt changes in level. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route – the current route contains excessive sloping; a discriminatory omission which limits his options for access and transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g. Vinnie Pizzeria's fails to provide the requisite number of accessible dining tables; a violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables Mr. Maurer has not been able to comfortably dine with his family.

h. Payment counters, work surfaces, and other service amenities throughout Settler's Landing – including those within Acme, China King, Marchioni's Pizza, and Dazzlz – are mounted

beyond the allowable limits and outside of Mr. Maurer's reach range; a violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. Due to their improper height Mr. Maurer could not make use of these amenities.

i. The tenant space entrances are impeded by abrupt changes of level, steps, and/or excessive sloping at the base of the doors; violations of the ADAAG and Section 404 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not enter/exit the tenants without assistance.

**Restrooms**

j. The restrooms within tenant spaces China King, Acme, Marchioni's Pizza, and Dazzlz are inaccessible to Mr. Maurer due to architectural barriers and policy deficiencies. The barriers to access include incorrect signage, inaccessible water closets which lack the proper controls, and a lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards.

k. Restrooms within aforementioned tenant spaces contain dispensers which are improperly mounted beyond Mr. Maurer's reach – and outside the reach range of all wheelchair users – in violation of the ADAAG and Section 308 of the 2010 Standards. Due to their improper locations Mr. Maurer could not make use of the dispensers in the restrooms.

l. Restrooms within aforementioned tenant spaces contain improper toilet centerlines and lack properly installed grab bars; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not make use of the restrooms.

m. Restrooms within aforementioned tenant spaces contain lavatories that lack the requisite knee and toe clearance; in violation of the ADAAG and Section 606 of the 2010 ADA Standards. Due to these barriers and the overall inaccessibility of the restrooms Mr. Maurer

    could not wash her hands nor make use of the sinks.

n. The doors which are used to access the restrooms within aforementioned tenant spaces are impeded by improper signage and a lack of required wheelchair maneuvering clearance; in violation of the ADAAG and Section 404 of the 2010 ADA Standards. Due to the lack of accessibility Mr. Maurer could not enter/exit the restrooms without assistance.

30. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[6]

31. The discriminatory violations described in Paragraph 29 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Maurer. Plaintiffs require thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA/LAD.

32. Plaintiffs, and other similarly situated mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for under the ADA and

---

[6] 28 CFR § 36.104

requested herein.

33.    Defendant has discriminated against Plaintiffs, and other similarly situated mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

34.    Defendant continues to discriminate against Plaintiffs, and other similarly situated mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[7]

35.    Defendant continues to discriminate against Plaintiffs, and other similarly situated mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[8]

36.    Defendant continues to discriminate against Plaintiffs, and other similarly situated mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[9]

37.    If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[10] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

---

[7] 42 U.S.C. § 12181(b)(2)(A)(iv)
[8] 42 U.S.C. § 12181(b)(2)(A)(ii)
[9] 42 U.S.C. § 12181(b)(2)(A)(iii)
[10] as defined by 28 CFR § 36.401(a)(2)

38. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[11] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

39. Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

40. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

---

[11] 28 CFR § 36.402(a)(2)

41. Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

42. Plaintiffs are without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

43. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

44. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cure their violations of the ADA.[12]

**WHEREFORE,** Plaintiffs respectfully demand;

   a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

   b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the

---

[12] 42 U.S.C. § 12188(b)(2)

next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
### Violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

45. Plaintiffs reallege and incorporate, by reference, all of the allegations contained in all of the preceding paragraphs.

46. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

47. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[13]

48. As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all

---

[13] Pursuant to N.J.S.A 10:5-4

other mobility impaired individuals, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

49. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained bodily injury in the form of emotional distress, mental anguish, dignitary harm, and humiliation – in violation of the LAD.

**WHEREFORE**, Plaintiffs respectfully demand;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property - as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 11th day of September,

> */s/ Jon G. Shadinger Jr.*
> Jon G. Shadinger Jr., Esq.
> Shadinger Law, LLC
> 717 E. Elmer St, Suite 7
> Vineland, NJ 08360
> (609) 319-5399
> js@shadingerlaw.com
> *Attorney for Plaintiffs, Dennis Maurer and The Independence Project, Inc.*

16